UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURA NICHOLS, individually and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

PEACEHEALTH NETWORKS ON DEMAND, LLC, d/b/a ZOOMCARE, a Washington limited liability company,

*Defendant*.

Case No. 2:25-CV-01831-JHC

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PEACEHEALTH NETWORKS ON DEMAND, LLC'S MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
December 14, 2025



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

# TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........................................ 1

LEGAL STANDARD ........................................ 3

ARGUMENT ........................................ 3

I. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose ........................................ 3

II. Defendant Intentionally Used Google Analytics To Intercept Plaintiff's Communications ........................................ 7

III. Plaintiff Alleges That Defendant Intercepted The "Contents" Of Her Communications ........................................ 9

CONCLUSION ........................................ 11




CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 3

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ... 5

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ... 5, 10

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
2020 WL 68578 (E.D. Cal. Jan. 7, 2020) ... 8

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ... passim

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ... 9

*Foman v. Davis*,
371 U.S. 178 (1962) ... 10

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) ... 3

*I.T. v. ChoicePoint LLC*,
2025 WL 2495079 (W.D. Wash. Aug. 29, 2025) ... 2, 4, 6, 9

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal 2015) ... 10

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ... 9

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) ... 4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ... 4, 9, 10

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 (D. Conn. 2014) ... 2, 7




CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 9

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 4

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. Apr. 6, 2023) .......... 6

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......... 4

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y.2006) .......... 2, 7, 8

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 3

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 8

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 4, 9

*Murphy v. Thomas Jefferson Univ. Hospitals, Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) .......... 4

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 5, 10

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 8

*R.S. v. Prime Healthcare Services, Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 8

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .......... 3

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 4

*Usher v. City of Los Angeles*,
828 F.2d 556 (9th Cir. 1987) .......... 3


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*W.W. v. Orlando Health, Inc.*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) .................... 4

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. Feb. 13, 2025) .................... 6

**STATUTES**

18 U.S.C. § 2510(8) .................... 9

18 U.S.C. § 2511 (1)(a) .................... 7, 8

18 U.S.C. § 2511(2)(d) .................... 3

18 U.S.C. § 2520 .................... 7

18 U.S.C. § 2520(a) .................... 8

**REGULATIONS**

45 CFR 164.508(a)(3) .................... 4



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

**INTRODUCTION**

Defendant PeaceHealth Networks on Demand, LLC d/b/a ZoomCare ("Defendant") operates a network of primary and urgent care medical facilities under the ZoomCare brand. *See* Class Action Complaint (ECF No. 1) ("Compl.") ¶ 1. Individuals seeking treatment for a variety of medical services (mental health, women's health, emergency care, etc.) can book an appointment on Defendant's website, www.zoomcare.com (the "Website"). *Id*. ¶ 2. Unbeknownst to its patients, Defendant assists third party Google, LLC ("Google")—a company whose primary source of revenue is advertising (*Id*. Fig. 1)—with disclosing and intercepting sensitive and confidential appointment details. *Id*. ¶ 3. Such information is not shared for the purpose of providing treatment, but rather, for the sole purpose of targeted advertising, enabling Google to monetize the private medical information it illegally intercepts. Google does not only utilize this information for Defendant's benefit, but also for its own. *Id.* ¶ 58. The information Defendant assists Google with intercepting is protected from disclosure by federal law. *Id.* ¶¶ 17–28.

Like all other putative class members, Plaintiff booked a medical appointment on Defendant's Website. *Id.* ¶¶ 6–8. During this time, Plaintiff maintained an active Google account. *Id*. Unbeknownst to Plaintiff, and without her consent, information related to her medical appointment was intercepted through Google Analytics, a tracking code Defendant embedded on its Website. The information disclosed to Google goes far beyond mere browsing information because it includes the specific medical condition Plaintiff (as well as every other patient) was scheduling treatment for. *Id*. ¶¶6–9; *see e.g.*, Figs. 2–3. Defendant's actions demonstrate a blatant disregard for its duties as a medical provider as well as its patients' privacy interests.

Defendant now moves to dismiss Plaintiff's Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 7) ("MTD"). However, many of the arguments raised by Defendant here have already been rejected by this Court. *See Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024) (J., Chun).


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

First, Defendant argues it cannot be held liable under the ECPA because Plaintiff fails to plead a criminal or tortious purpose independent of the purpose of intercepting Plaintiff's data. MTD at 5–9. Courts across the nation, including this Court, have repeatedly rejected this argument. *Castillo*, 2024 WL 4785136, at *6 ("The Court concludes that alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception.").

Next, Defendant misrepresents Plaintiff's claims as seeking to hold Defendant liable through an "aiding or abetting" theory. Contrary to Defendant's misrepresentations, Plaintiff's ECPA claim is sustainable under both procurement and direct liability theories. *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n. 2 (D. Conn. 2014) ("The statute prohibits an entity from intercepting, endeavoring to intercept or procuring another to intercept. We do not intend our definition of aider and abettor to cover a "procurer" as used in the statute) (citing *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427–28 (E.D.N.Y.2006) ("A procurer is not an aider and abettor but one who violates the statute directly")).

Finally, Defendant argues "Plaintiff has not pled facts showing that the 'contents' of any communications were disclosed to Google or any third party." MTD at 11. However, this Court has already recognized that communications related to medical information and medical treatment satisfies the "contents" requirement of the ECPA. *See Castillo*, 2024 WL 4785136, at *4 (finding that searches for "information about patient status, prescriptions, underlying health conditions, and other Sensitive Information," are the "contents" of a communication); *I.T. v. ChoicePoint LLC*, 2025 WL 2495079, *7 (W.D. Wash. Aug. 29, 2025) ("[A]s many other courts have found, the information Plaintiffs allege was intercepted by [defendant] here—that Plaintiffs sought an appointment for addiction treatment services and the outcome of their online assessment—does constitute the "contents" of the communication under ECPA . . . because that information constitutes the substance, purpose, and meaning of the message.").

For these reasons, and those discussed more thoroughly below, Defendant's Motion should be denied in its entirety.


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendant contends Plaintiff "cannot establish that any communication has been unlawfully 'intercepted' by ZoomCare" because it was a party to the communication. MTD at. 5. However, as conceded by Defendant, the party exception does not apply if the "'communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" MTD at 5 (quoting 18 U.S.C. § 2511(2)(d)). In other words, if Defendant intercepted Plaintiff's communications "for the purpose of committing any tortious or criminal act," as Plaintiff alleges here, it cannot escape liability. Compl. ¶¶ 17–28, 97–99. The crime-tort exception focuses on whether "the


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

Here, Defendant's conduct falls squarely within the crime-tort exception because it intercepted and disclosed HIPAA-protected health information to unauthorized third parties, including Google, through its use of Google Analytics. Compl. ¶¶ 17–28, 59–71, 97–101. Defendant intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization. *Id.* Further, intercepting and disclosing this information for marketing purposes expressly requires HIPAA-compliant authorization (*see* 45 CFR 164.508(a)(3)), which Defendant did not obtain. Numerous federal courts throughout the country, including this Court, have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024); *I.T. v. ChoicePoint LLC*, 2025 WL 249079, at *8 (W.D. Wash. Aug. 29, 2025) (same); *Kurowski v. Rush Sys. For Health,* 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception…[and that the complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception); *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025); *Murphy v. Thomas Jefferson Univ. Hospitals, Inc.*, 2024 WL 4350328 at *4–5 (E.D. Pa. Sept. 30, 2024) (finding "intention to violate HIPAA sufficient to invoke the crime-tort exception to the ECPA."); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("*Meta Pixel I*") ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws").

The authority relied upon by Defendant is distinguishable, as none of those cases contained allegations related to the disclosure of information concerning a patient's medical symptoms or treatment. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1084 (W.D. Wash. 2024) ("Plaintiff provides no information as to whether she used Defendant's Public Website to schedule an appointment"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (allegations too vague as to type of information allegedly disclosed); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) ("[plaintiff] does not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable"). Indeed, the *Nienaber* court even acknowledged that "[d]isclosure through publicly available webpages that, plausibly relate to the provision of healthcare or connect a particular user to a particular healthcare provider may be actionable." 733 F.Supp.3d at 1083. That is precisely what Plaintiff has alleged here. Compl. ¶ 7, Figures 2-3.

Defendant's remaining argument that "the crime-tort exception does not apply here because the alleged violation of HIPAA cannot be separated from the alleged act of wiretapping" has already been rejected by this Court. MTD at 6; *Castillo*, 2024 WL 4785136, at *5. Here, Plaintiff alleges that Defendant violated HIPAA by intercepting *and* disclosing Plaintiff's and class members' communications to unauthorized third parties. *See* Compl. ¶¶ 7, 49, 60, 93. As this Court explained in *Castillo*, this theory of liability conforms with the text of the ECPA and has been endorsed by the Ninth Circuit:

> The Court disagrees that use of health information 'inheres in the alleged interception.' In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

> communications and a separate criminal or tortious purpose by providing that the communication must be '***intercepted for the purpose of committing any criminal or tortious act.' The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.***
>
> The Ninth Circuit has favorably cited a Second Circuit decision that states, 'if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.' The Court concludes that ***alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception.***

*Castillo*, 2024 WL 4785136, at *6 (internal citations omitted) (emphasis added); *see also ChoicePoint LLC*, 2025 WL 2495079, at *8 ("the alleged HIPAA violation and the ECPA violation are one and the same and thus the HIPAA-related allegations are insufficient to independently invoke the crime-tort exception[,]" the court rejected that argument, explaining "[m]ultiple courts have rejected this argument, concluding that an intent to disclose or use private information in violation of HIPAA is distinct from the interception of the private information" and that the defendant's "intent to disclose [plaintiffs'] information in violation of HIPAA is a separate act from the interception of their data.") (internal citations omitted). Therefore, the out-of-Circuit authority relied upon by Defendant is unpersuasive.

Defendant's in-Circuit authority fares no better, as it does not concern the unlawful disclosure of health information. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 935 (N.D. Cal. Apr. 6, 2023) (case concerning the collection of general web browsing activity); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 887, 896 (S.D. Cal. Feb. 13, 2025) (granting motion to dismiss ECPA claim with leave to amend where Plaintiff "did not address the purpose of [the defendant's] interceptions" and "Plaintiff does not allege that she ultimately purchased any medications, submitted a prescription, or otherwise engaged with the online pharmacy.").


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## II. Defendant Intentionally Used Google Analytics To Intercept Plaintiff's Communications

Defendant argues that Plaintiff's ECPA claim should be dismissed because there is no liability "for procuring, enabling, aiding or abetting another's interception," under the statute. MTD at 10. That is wrong, as Defendant misrepresents Plaintiff's allegations.

Plaintiff alleges that "[t]hrough these tracking technologies, Defendant intercepted its patients' communications when they scheduled medical appointments and disclosed such information to Google" and that "[s]uch disclosures contain information related to the medical appointment being scheduled by Defendant's patients, including the medical condition being treated." Compl. ¶¶ 60–62; *see also* ¶¶ 49, 94, 99. In addition to its patients' IP addresses, Defendant, through Google's tracking technologies, disclosed information about their specific devices and User-IDs to Google, allowing Google to link such information to a patient's specific identity." *Id.* ¶ 64. "By utilizing and embedding the Google tracking technologies on its Website, Defendant intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members." *Id.* ¶ 92. And "Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy through Google's tracking technologies." *Id.* ¶ 101. Accordingly, Plaintiff does not bring her ECPA claim under an aiding and abetting theory. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n. 2 (D. Conn. 2014) ("We do not intend our definition of aider and abettor to cover a 'procurer' as used in the statute.") (citing *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427–28 (E.D.N.Y.2006) ("A procurer is not an aider and abettor but one who violates the statute directly")). The *Lonegan* court also rejected the narrow interpretation of the ECPA advanced by Defendant:

> To me, the more natural reading of the amended statute shows no intent on the part of Congress to eliminate the private right of action for procurement violations. In relevant part, the amended statute provides that "any person whose wire, oral, or electronic


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

> communication is intercepted ... in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation ..." 18 U.S.C. § 2520 (2005). Pursuant to Section 2511(1)(a), the class of persons whose communications are intercepted in violation of the Wiretap Act includes those persons whose communications are intercepted by someone who was procured to do so by a third party. In such case, both the person who actually intercepted the communications and the person who procured the interception have violated the Act, and the victim is authorized to sue any person or entity who engaged in that violation.

436 F. Supp. 2d at 428.

In any event, courts consistently find similar allegations sufficient to sustain a claim for violation of the ECPA. *See id.* ("But even if Congress did eliminate the private right of action against those who procure the interception of protected communications, plaintiffs' Wiretap Act claims cannot be dismissed. As an alternative to their procurement theory of liability, plaintiffs assert that Hasty intercepted their communications directly. Therefore, even if the procurement theory fails, the direct interception theory is sufficient to support the claims"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024); *R.S. v. Prime Healthcare Services, Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025).

The authority upon which Defendant relies is inapplicable. *See Matera v. Google Inc.*, 2016 WL 8200619, at *10 (N.D. Cal. Aug. 12, 2016) (in denying the defendant's motion to dismiss, the court explained "*Kirch* stands only for the narrow proposition that interceptions incidental to the provision of the alleged interceptor's internet service fall within the 'ordinary course of business' exception."); *Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020) (explaining "the Fifth Circuit [in *Peavy*] did not . . consider the other change made to § 2520(a) . . . specifically addition of language allowing recovery from the 'person or entity' which engaged in the violation of § 2511(1)(a) . . . Given that procurement can still give rise to a violation under § 2511(1)(a), and given that an entity may be civilly liable under § 2520(a) for that violation, defendant in this case may be held civilly liable if it violated the underlying criminal statute by way of procurement").


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

### III. Plaintiff Alleges That Defendant Intercepted The "Contents" Of Her Communications

Defendant argues that Plaintiff's ECPA claim must be dismissed because she "has not pled facts showing that the 'contents' of any communications were disclosed to Google or any other third party." MTD at 11. But Defendant's argument is premised on misstatements of fact and outdated case law.

Under the ECPA, "content" includes "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "For instance, contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication." *Meta Pixel I*, 647 F. Supp. 3d at 795. The "post-domain name portions" of website URLs—everything after ".com"—also disclose details about the webpages requested and constitute "content" under the ECPA. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user.").

In the Ninth Circuit, "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to a disclosure of the contents of a communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Federal courts throughout the country have concluded that communications intercepted by the tracking technologies, like Google Analytics, constitute "contents" if they reveal the substance of health queries between a patient and healthcare provider. *ChoicePoint LLC*, 2025 WL 2495079, *7 ("But, as many other courts have found, the information Plaintiffs allege was intercepted by ChoicePoint here—that Plaintiffs sought an appointment for addiction treatment services and the outcome of their online assessment—does constitute the "contents" of the communication under ECPA, as defined by Zynga, because that information constitutes the substance, purpose, and meaning of the message."); *Meta Pixel* I, 647 F. Supp. 3d at 795–96 (observing that "log-in buttons and . . . descriptive URLs . . . are 'contents' within the meaning of the statute … because they concern


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

the substance of the communication."); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("here Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI."); *Mekhail*, 726 F. Supp. 3d at 926 (finding allegations "that substantive information, including details about medical appointments, conditions, and treatments, was obtained via the Pixel" sufficiently "pleaded that 'contents' were intercepted."). Even the *Nienaber* court, which Defendant relies upon in support of its argument, explicitly stated that the "[d]isclosure through publicly available webpages that, plausibly relate to the provision of healthcare or connect a particular user to a particular healthcare provider may be actionable." 733 F. Supp. 3d at 1083.

*Castillo* is instructive. There, this Court found that searches for "information about patient status, prescriptions, underlying health conditions, and other Sensitive Information," are the "contents" of a communication. 2024 WL 4785136, at *4. That is precisely what Plaintiff has alleged here. As detailed in her Complaint, and as supported by network traffic observed on the Website, Defendant discloses, through Google Analytics, *the precise medical condition its patients are scheduling treatment for*. Compl. ¶¶ 6–8, 61, Figures 2–3. Specifically, as shown in Figure 2, Defendant discloses the precise medical symptoms its patients are seeking to schedule appointments for, such as genital herpes. Identical disclosures about appointment details were made regardless of the treatment sought, including when Plaintiff, and any other putative class member, scheduled their appointments on Defendant's Website. *Id.* Courts facing similar motions to dismiss have repeatedly held that tracking technologies, like Google Analytics, intercept the contents of communications. *See, e.g.*, *Meta Pixel I*, 647 F. Supp. 3d at 795 ("the log-in buttons" and "descriptive URLs … are 'contents' within the meaning of the statute.").

The authority relied upon by Defendant is inapposite, as those cases concerned mere browsing activity on public websites (*See, e.g., In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal 2015)) and allegations lacking specificity. *See Eisenhower*, 721 F. Supp. 3d at 1064.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied. Alternatively, if the motion is granted in any respect, Plaintiff should be given leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.").

Respectfully Submitted,

**LAURA NICHOLS**, individually and on behalf of all others similarly situated,

Dated: November 24, 2025

By: /s/ *Wright A. Noel*
Wright A. Noel

Wright A. Noel
wright@carsonnoel.com
CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel: 425.837.4717
Fax: 425.837.5396

Alec M. Leslie*
aleslie@bursor.com
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 646.837.7150
Fax: 212.989.9163

**Pro hac vice* admission to be sought

*Attorneys for Plaintiff and the Putative Class*