HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAURA NICHOLS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEACEHEALTH NETWORKS ON DEMAND, LLC, d/b/a ZOOMCARE, a Washington limited liability company,<br><br>Defendant. | No. 2:25-cv-01831-JHC<br><br>**DEFENDANT PEACEHEALTH NETWORKS ON DEMAND, LLC D/B/A ZOOMCARE'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(B)(6)**<br><br>NOTE ON MOTION CALENDAR: DECEMBER 15, 2025<br><br>ORAL ARGUMENT REQUESTED |



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

## I. INTRODUCTION

Plaintiff Laura Nichols' ("Plaintiff") Opposition to defendant PeaceHealth Networks on Demand, LLC d/b/a ZoomCare ("ZoomCare") Motion to Dismiss ("Motion") Plaintiff's Complaint ("Complaint") underscores Plaintiff's failure to allege that ZoomCare engaged in anything more than the ubiquitous practice of using a third-party analytics technology on its ***public*** website. Plaintiff's claims rest upon allegations that she used ZoomCare's public website (Compl. ¶ 6), that she thereafter "received targeted advertisements for similar products and services" (*id*. ¶ 8), and on allegations about a hypothetical website visitor's browsing activity being transmitted to Google. There are simply no facts alleged in the Complaint supporting the conclusion that Plaintiff's protected health information ("PHI") was transmitted to Google. And, there are no allegations tying the Plaintiff's own experience to the allegations about what *may* happen when a hypothetical user visits that ***public*** website (*id.* ¶¶ 61, 64, 65, 67).

Plaintiff has admittedly not alleged that Google Analytics ("GA") was implemented on any secure patient portal as distinguished from ZoomCare's ***public*** website (Comp. ¶¶ 7–9, 12, 45, 46, 49, 60, 64, 65, 93). As the court in *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) correctly determined, "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes." *See also Smith v. Facebook, Inc.*, 745 F. App'x *8, *9 (9th Cir. 2018) (affirming same).

For these and other reasons set forth in ZoomCare's Motion and in this Reply, Plaintiff's sole claim under the Electronic Communications Privacy Act ("ECPA") must be dismissed.

## II. THE ECPA CLAIM MUST BE DISMISSED

### *1. Plaintiff Still Fails to Allege Any Unlawful Interception*

Plaintiff does not challenge, and thus concedes, that the ECPA is a one-party consent statute, which generally means that an intended recipient of a communication (*i.e.*, ZoomCare) could not have unlawfully intercepted such a communication (that was directed to it). Mot. at 5–9; *see* Opp. at 3–6. Plaintiff instead argues her ECPA claim should survive through an *exception*



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

to the ECPA's one-party consent rule — *the crime or tortious act exception*. Plaintiff's argument misconstrues the crime or tortious act exception, which applies only if the plaintiff pleads a "tortious or criminal *use* of the acquired internet histories" ***separate and apart from*** the alleged recording or interception itself. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (refusing to apply exception in cookie privacy litigation where invasion of privacy "is a tort that occurs through the act of interception itself") (emphasis in original); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) ("Plaintiff points to no legal authority providing that the exception to § 2551(2)(d) is triggered when, as here, the tortious conduct is the alleged wiretapping itself."); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1096 (W.D. Wash. 2024) ("[T]he tortious or criminal act exception does not apply here.") (internal citation and quotations omitted); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (dismissing ECPA claim for failing to plead facts showing defendant healthcare provider's "purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable"). Plaintiff admits that the only criminal or tortious intent alleged here relates to the wiretapping itself. [1] Opp. at 3.

The Court should follow the directly on-point decisions in *Nienaber* and *B.K.*, both of which refused to apply the crime-tort exception to a health care provider where the health care provider was the intended recipient of any alleged communications occurring via the website and the facts allegedly supporting the exception were the same as the fact support the alleged wiretap. *Nienaber*, 733 F. Supp. 3d at 1095 ("Under the ECPA, it is not unlawful for a person to intercept electronic communications where such person is a party to the communication, as Defendant is

---

[1] Plaintiff relies on *Sussman v. Am. Broad. Co., Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) to advance her theory that "Defendant's conduct falls squarely within the crime-tort exception because it intercepted and disclosed HIPAA-protected health information to unauthorized third parties, including Google, through its use of Google Analytics." Opp. at 4. However, under analogous facts, the *Sussman* court dismissed the ECPA claim because, just like in the present circumstances, there was no tortious or criminal intent separate from the alleged recording, interception, or transmission.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

here.") (internal citation and quotations omitted); *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *12–13 (W.D. Wash. Mar. 4, 2025) (dismissing ECPA claim with prejudice); *B.K.*, 721 F. Supp. 3d at 1065 ("the party exception to Plaintiffs' ECPA . . . claim[] exempts Defendants from liability"); *see also Allen v. Novant Health, Inc.*, No. 1:22-cv-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (same ruling); *Pena*, 670 F. Supp. 3d at 1117–18 (same ruling). ZoomCare is identically situated.

The decisions on which Plaintiff relies to argue that she has alleged facts sufficient to trigger the exception did not adequately analyze the requirement that the tort or crime be separate from the act of wiretapping. Opp. at 4 (citing *Castillo v. Costco Wholesale Corp.*, No. 2:23-cv-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) and *I.T. v. ChoicePoint LLC*, No. 2:24-cv-01944-LK, 2025 WL 2495079 (W.D. Wash. Aug. 29, 2025)). As the court in *Nienaber* explained, "none of the cases cited by [p]laintiff evaluate the distinction between the interception and transmission of data." 2025 WL 692097, at *13 (discussing cases). The cases cited by Plaintiff here do not evaluate this distinction either. *See Castillo*, 2024 WL 4785136, at *5 ("The Court concludes that alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception."); *ChoicePoint LLC*, 2025 WL 2495079, at *8 (same).

Moreover, the better reasoned decisions have expressly rejected Plaintiff's argument (Opp. at 4) that a HIPAA violation may constitute independent criminal or tortious conduct sufficient to satisfy the crime-tort exception finding that where the alleged HIPAA violation arises from the same predicate set of facts as the alleged wiretap violation, the exception does not apply. *See, e.g.*, *Nienaber*, 2025 WL 692097, at *13 (dismissing ECPA claim with prejudice because plaintiff failed to "plead a tortious or criminal use of the acquired communications, ***separate*** from their recording interception, or transmission) (emph. added); *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (any finding that a HIPAA or privacy tort violation could have occurred would "encompass only the simultaneous interception



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

and disclosure of information to Meta."); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (reaching same conclusion).[2]

Furthermore, even if the Court were to apply the reasoning of *Castillo* and *ChoicePoint LLC* without evaluating the need for a separate act, those cases are distinguishable. Unlike in those cases, Plaintiff here has not alleged facts sufficient to establish that any of her own HIPAA-protected PHI has been disclosed to a third party. *See Castillo*, 2024 WL 4785136 at *6 ("Plaintiffs allege that Costco used and disclosed data including 'patient status; prescription information (including specific drugs and pricing information); immunization information; treatments; patient location; and health insurance coverage' that could be linked to them through their personal Facebook accounts"); *ChoicePoint LLC*, 2025 WL 2495079, at *3 ("the results of Plaintiffs' addiction survey are plausibly PHI when coupled with Plaintiff's requests for appointments."). In this case, Plaintiff merely alleges speculative and hypothetical allegations regarding unknown patients.

Even setting aside the reality that Plaintiff has not alleged a separate criminal or tortious act, Plaintiff's argument for application of the crime-tort exception fails because she has not alleged facts to support the requisite level of intent. The Opposition does not acknowledge, let alone deal with, the instructive authorities discussed by ZoomCare in its Motion. *See* Mot. at 7–8; *Karen McManus v. Tufts Med. Ctr., Inc.*, No. 25-cv-10008-ADB, 2025 WL 2778025, at *3 (D. Mass. Sept. 29, 2025) (dismissing plaintiff's ECPA claim because allegations that the defendant "specifically used tracking technologies to intercept and disclose Plaintiff's and Class Members Private Information for financial gain,…sought to increase revenue from existing patients and gain new patients, … and thus chose to put its business interests over the privacy of its patients,… are [] insufficient to satisfy the crime-trot exception.") (quotations and citation omitted); *Goulart v.*

---

[2] Plaintiff's reliance on *B.K. v. Desert Care Network*, No. 2:23-cv-0521 SPG (PDx), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) is misplaced because *Desert Care* involved an independent tort, unlike here.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

*Cape Code Healthcare, Inc.*, No. 25-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025) appeal docketed, No. 25-1672 (1st Cir. July 23, 2025) (dismissing ECPA claim and finding the crime-tort exception did not apply because plaintiffs' complaint "fails to plausibly allege that [the defendant's] 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology to Facebook and Google was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience."); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) (finding defendant's motivations were "licit and commercial," not tortious, and thus, as a matter of law, plaintiffs failed to allege defendant acted with "tortious" purpose); *Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing ECPA claim and reasoning "[b]y [p]laintiff's own account, the 'trackers' were 'used by the [d]efendant to benefit [the defendant] and its marketing and advertising purposes,'…not for the purpose of knowingly committing a violation of the HIPAA.") (internal citation omitted); *Sweat v. Houston Methodist Hosp.*, No. H-24-775, 2025 WL 2697111, at *8 (S.D. Tex. Sept. 22, 2025) (granting summary judgment to defendant on the plaintiff's ECPA claim and reasoning "[t]he disclosure of what was not known to be personally identifiable health information, but instead believed to be aggregate data, for a commercial purpose, is not a crime or a tort. It cannot trigger the crime-tort exception, which requires the purpose of committing a criminal or tortious 'act'").

Consistent with *Nienaber* and other well-reasoned decisions, the tortious or criminal act exception to the ECPA does not apply here. Therefore, the ECPA claim should be dismissed.

### *2. Plaintiff Fails to Allege Any Plausible Interception of "Contents"*

Plaintiff's opposition underscores that no "contents" of any alleged communications are at issue here.

The Ninth Circuit's guidance in *Zynga* is instructive. The Ninth Circuit explained that even though a URL could disclose that a person viewed the "page of a gay support group," such URLs "function[] like an 'address,'" not "contents" of a communication. *In re Zynga Privacy Litig.*, 750



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

F.3d 1098, 1107 (9th Cir. 2014). Here too, the alleged disclosure of a public website user (non-patient) browsing ZoomCare's website and/or clicking a button to schedule an appointment, does not reveal "contents" of any protected medical information, but rather the "address" of a URL. *Id.*; *Id*. at 1106–07 (in the ECPA "the term 'contents' refers to the intended message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated in the course of the communication.").

Plaintiff also makes no attempt to distinguish *Facebook Internet Tracking Litig*., which held that a URL sent to Facebook by a user's browser does not qualify as "contents" of a "communication" because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication.'" 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (citation omitted).

Plaintiff cites to *Mekhail v. N. Memorial Health Care*, 726 F. Supp. 3d 916 (2024), *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 96 (S.D. Cal. 2023), *Castillo*, 2024 WL 4785136, and *ChoicePoint LLC*, 2025 WL 2495079 in support of her argument that "content" is at issue. However, those cases do not help Plaintiff and instead, underscore the fundamental flaw in Plaintiff's lawsuit: the plaintiffs in *Mekhail*, *Cousin*, *Castillo*, and *ChoicePoint LLC* alleged specific allegations regarding what they searched, "including details about medical appointments, conditions, and treatments." *Mekhail*, 726 F. Supp. 3d at 926; *see also Cousin*, 702 F.Supp.3d at 973 (Plaintiff's complaint alleged "their particular medical conditions and alleged that they searched Defendant's website for doctors who specialize in these conditions and for information about their conditions."); *Castillo*, 2024 WL 4785136, at *4 (plaintiffs alleged that "they searched for information about patient status, prescriptions, underlying health conditions, and other Sensitive Information.") (citation and quotations omitted); *ChoicePoint LLC*, 2025 WL 2495079, at *7 (the court found that allegations of a specific type of an appointment (addiction treatment services) together with the outcome of a person's online assessment (an addiction evaluation) constituted "contents" of a communication.). No such allegations exist here.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Plaintiff has no meaningful answer to *Nienaber v. Overlake Hosp. Med. Center*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024), which relied on *Smith I* and held that "the [public] URL, [do not relate] 'to the past, present, or future physical or mental health or condition of an individual.'" Like the plaintiff in *Nienaber*, Plaintiff here has pled "nothing but browsing activity on a public website." *Id.*; *see also Zynga*, 750 F.3d at 1106-07 (same). Plaintiff has not otherwise pled facts showing that her alleged interactions "plausibly relate to the provision of healthcare," as Plaintiff is not an alleged patient, let alone facts "connect[ing] a particular [public website] user to a particular health care provider." *Id*. at 1082.

Plaintiff also relies on *R.C. v. Walgreen Co*., No. EDCV 23-1933-JGB (SPx), 2024 WL 2263395 (N.D. Cal. May 9, 2024), but *Walgreen* is inapposite because its "allegations differ[ed] in kind and severity" than cases such as this one. In *Walgreen*, the "disclosure of [plaintiffs'] private information to Meta via the Pixel included the purchasing of sensitive healthcare products (Monistat and a diabetes test kit) related to specific health conditions (yeast infection and diabetes)." *Id*. at *893. No such allegations are present here.

Plaintiff argues that she "detailed in her Complaint" that "Defendant disclosed, through Google Analytics, the precise medical conditions its patients are scheduling treatment for." (emph. omitted) and points to paragraphs 6–8 and 61 of the Complaint. Opp. at 10:13–16. But, Plaintiff merely alleges in paragraphs 6–8 of the Complaint that she "book[ed] medical appointments," (Compl. ¶ 6), that ZoomCare allegedly "disclosed her PHI – including the specific medical appointments scheduled on the Website - to Google….", and she allegedly "began receiving targeted advertisements" (*id.* ¶ 8). And paragraph 61 of her Complaint is even more speculative as it merely involves hypothetical allegations of an unknown patient. Unlike the plaintiffs in *Mekhail*, *Cousin*, *Castillo*, and *ChoicePoint LLC*, Plaintiff here does not allege *what* she searched for, or even expressly allege that she is a patient of ZoomCare. An individual may schedule an appointment, but scheduling an appointment does not mean the person is a patient of ZoomCare nor that they even completed the appointment.


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

At best, the information allegedly collected and disclosed is the same type of "extrinsic information used to route a communication" that courts have repeatedly concluded does not constitute "contents" under wiretap statutes. *Google Cookie Placement*, 806 F.3d at 135. Plaintiff merely *concludes* in her Complaint that her "sensitive and confidential communications," "private and confidential information" and "confidential PHI" are transmitted to Google. Compl. ¶¶ 3, 86, 93–94, 99, 101. And in her Opposition, Plaintiff merely restates how she *used* the website, not what substantive contents of her actual communications were intercepted or how the contents of her own communications (not a hypothetical user's communications) were sent to Google or in what format.

Accordingly, the ECPA claim should be dismissed for this separate reason.

***3. There Can Be No Civil Liability for Allegedly "Procur[ing]" or Aiding and Abetting an Alleged Interception Through Google Analytics***

To evade the fact that the ECPA does not allow for an aiding and abetting claim, which is exactly what Plaintiff has asserted against ZoomCare, Plaintiff argues ZoomCare "misrepresents Plaintiff's allegations" and that ZoomCare "intentionally intercepted [her] … communications" directly. Opp. at 7:5–18. However, Plaintiff fails to allege any *facts* that it was *ZoomCare* that intercepted Plaintiff's data; moreover, ZoomCare could not have directly intercepted its own data under the ECPA's one-party consent framework. *See Nienaber*, 733 F. Supp. 3d at 1096. On the face of the Complaint, any alleged interception was done by a third party through its technology (Google via GA), and because there is otherwise no aiding and abetting liability under the ECPA, Plaintiff cannot state her (aiding-and-abetting-based) ECPA claim against ZoomCare. Mot. at 9–11.

Plaintiff cites to *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132 (D. Conn. 2014) in support of her argument, but in *Trilegiant*, the court dismissed the plaintiffs' ECPA claim because, just like the Plaintiff here, they did "not sufficiently state[] how the [] Defendants aided or abetted the interception of the Plaintiffs' confidential billing information. In fact, the Plaintiffs have not even



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

alleged that the [Defendants] knew or were involved in the datapass at all." *Id*. at 148. And *Lonegan v. Hasty*, 436 F. Supp. 2d 4219 (E.D.N.Y. 2006) is easily distinguishable because again, unlike here, the Plaintiff alleged that the defendant "intercepted their communications directly." Here, Plaintiff's underlying allegations identify Google – not ZoomCare – as the party that allegedly intercepted the communications. Compl. ¶¶ 3, 43, 49.[3]

## III. CONCLUSION

ZoomCare respectfully asks the Court to grant its motion to dismiss Plaintiff's Complaint with prejudice. Any amendment would be futile because, just like the *Nienaber* court recognized under identical factual circumstances, there can be no tortious or criminal intent here that is separate from any alleged recording, interception, or transmission. Further, there can be no civil liability for "procuring" or aiding and abetting an alleged interception through Google Analytics—which is precisely what Plaintiff has alleged here.

[3] Plaintiff also cites to *R.S. v. Prime Healthcare Services, Inc.*, No. 5:24-cv-00330-ODW (SPx), 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) in support of her argument, but the court in *Prime Healthcare* did not address the issue of procuring or aiding and abetting an alleged interception.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Dated Monday, December 15, 2025.

**BAKER & HOSTETLER LLP**

By *s/Alexander Vitruk*
Paul G. Karlsgodt, WSBA #40311
Alexander Vitruk, WSBA #57337
Logan F. Peppin, WSBA #55704
**BAKER & HOSTETLER LLP**
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Tel: (206) 332-1380
E-mails: pkarlsgodt@bakerlaw.com
avitruk@bakerlaw.com
lpeppin@bakerlaw.com

*Attorneys for Defendant PeaceHealth Networks on Demand, LLC d/b/a ZoomCare*

*I certify that this document contains 2878 words, in compliance with the Local Civil Rules.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2025 a true and correct copy of the foregoing document was served via USDC Western Washington CM/ECF Notice and/or E-Mail upon the following:

Wright A. Noel
**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel: (425) 837-4717
E-mail: wright@carsonnoel.com

Alec M. Leslie, *pro hac vice forthcoming*
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Email: aleslie@bursor.com

*Attorneys for Plaintiff and the Putative Class*

*s/Cheryl A. Phillips*
Cheryl Phillips, Legal Assistant