HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAURA NICHOLS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>PEACEHEALTH NETWORKS ON DEMAND, LLC d/b/a ZOOMCARE, a Washington limited liability company,<br><br>*Defendant*. | Case No. 2:25-cv-01831<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br>JURY DEMAND |

Plaintiff Laura Nichols ("Plaintiff") brings this class action complaint individually and on behalf of all others similarly situated (the "Class Members") against Defendant PeaceHealth Networks on Demand, LLC d/b/a ZoomCare (hereinafter, "Defendant" or "ZoomCare"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1. Defendant owns and operates a national network of primary and urgent care medical facilities under the ZoomCare brand. Defendant advertises itself as providing "Beyond Better Care," offering its patients medical services related to "Mental Health," "Women's



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

Health," and "Emergency Care," among others.[1]

2. ZoomCare operates a website, https://www.zoomcare.com/ (the "Website"), which allows for the online booking of medical appointments.

3. When booking medical services online, patient privacy is crucial. Patients expect, as they should, that their information will be held in confidence and not shared with third parties without their knowledge or consent. The sensitive nature of information concerning an individual's healthcare, including medical procedures, is protected by state and federal law. Despite these protections and Defendant's duty as a healthcare provider, Defendant aided, employed, agreed, and conspired with Google LLC ("Google") to intercept sensitive and confidential communications sent and received by Plaintiff and Class Members, including communications containing protected medical information.

4. This is a class action lawsuit brought on behalf of all persons who have accessed and used the Website to book a medical appointment with Defendant.

5. Plaintiff seeks an order (i) declaring that Defendant's conduct violates the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1); (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding statutory damages to Plaintiff and the proposed Class (defined below).

## PARTIES

6. Plaintiff is an adult citizen of the state of Washington and is domiciled in Seattle, Washington. At all relevant times, Plaintiff has maintained a Gmail account and has accessed Defendant's Website to book medical appointments, including as recently as April 2025.

7. For example, on March 26, 2025, Plaintiff booked a medical appointment through Defendant's Website for treatment related to her broken hand. Plaintiff made another medical appointment through Defendant's Website on April 30, 2025, for treatment related to a cold. When scheduling her medical appointments on Defendant's Website, Plaintiff disclosed to

[1] https://www.zoomcare.com/



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

Defendant the medical nature of her symptoms (e.g. broken hand and cold).

8. Unbeknownst to Plaintiff, Defendant disclosed her PHI—including information related to the specific medical appointments scheduled on the Website—to Google for targeted advertising purposes. Defendant also disclosed sufficient personally identifiable information ("PII") for Google to identify Plaintiff as the specific individual scheduling such medical appointments, as described more thoroughly below.

9. After scheduling appointments for medical treatment on the Website, Plaintiff began receiving targeted advertisements for similar products and services. However, due to the surreptitious nature of the interceptions at issue, Plaintiff did not know (and had no way to know) the reason why she was receiving such targeted advertisements until contacting undersigned counsel shortly before filing the instant action. Because the data interceptions occurred covertly and in real time while Plaintiff was navigating Defendant's Website, Plaintiff had no visibility into, nor any reasonable method of discovering the fact that her medical information was being simultaneously transmitted to third-party advertising platforms like Google. These transmissions were executed through hidden tracking tools that operate silently in the background of a webpage, without any meaningful disclosure to the user and without any affirmative action by the user that would reveal their presence.

10. Plaintiff would not have scheduled medical appointments on the Website if she knew Defendant was violating her privacy by sharing her PHI with unknown third parties.

11. When registering for her Gmail account, Google required that Plaintiff provide her full legal name, date of birth, and gender. Every time Plaintiff accesses her Gmail account, Google collects information related to her IP address and electronic device (e.g. browser, operating system, screen resolution, etc.) and stores it in a profile maintained by Google for targeted advertising purposes. Google also utilizes other features, such as generating specific User IDs, to track its users across web browsing sessions for identification purposes, as detailed below. Google utilizes all of these tracking features in order to build robust consumer profiles it can then leverage for targeted advertising purposes.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

12. Defendant PeaceHealth Networks on Demand, LLC d/b/a ZoomCare is a Washington limited liability company with its principal place of business in Vancouver, Washington.

13. Defendant owns and operates the Website www.zoomcare.com. Defendant provides in-person medical services and treatment at its forty-five clinics located across the Pacific Northwest. Defendant embedded a software code known as Google's tracking technology on its Website, as described in more detail below. Defendant embedded this tracking technology on its Website for advertising purposes.

14. By failing to receive the requisite consent, Defendant breached its duties of confidentiality and unlawfully disclosed its patients' PII and PHI in violation of HIPAA when they schedule medical appointments on Defendant's Website.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the Electronic Communications Privacy Act, 18 U.S.C. § 2511).

16. The Court has personal jurisdiction over Defendant because Defendant is licensed to conduct business in this District and maintains its headquarters and principal place of business in this District.

17. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is licensed to conduct business in this District and its headquarters and principal place of business are maintained in this District.

18. The case is properly filed in the Seattle division of this District because the claims arose in Seattle where Plaintiff resides. The substantial events that gave rise to Plaintiff's claims were the taking of Plaintiff's PHI and PII that occurred as she input that information on her computer, within Seattle.

## FACTUAL ALLEGATIONS

### I. Warning Regarding Tracking Codes on Health Care Websites.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

19. The federal government has issued guidance warning that tracking code, like Google Analytics, may violate federal privacy law when installed on healthcare websites such as Defendant's. The statement titled, USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES (the "Bulletin"), was issued by the Department of Health and Human Services' Office for Civil Rights ("OCR") in December 2022.[2]

20. Healthcare organizations regulated under the Health Insurance Portability and Accountability Act ("HIPAA") may use third-party tracking tools, such as Google Analytics, in a limited way, to perform analysis on data key to operations. They are not permitted, however, to use these tools in a way that may expose patients' PHI to these vendors. The Bulletin explains:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. ***For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures***.[3]

21. The bulletin discusses the types of harm that disclosure may cause to the patient:

> An impermissible disclosure of an individual's PHI not only violates the Privacy Rule but also may result in a wide range of additional harms to the individual or others. For example, an impermissible disclosure of PHI may result in identity theft, financial loss, ***discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI***. Such disclosures can reveal incredibly sensitive information about an individual, ***including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment***. While it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors, ***because of the proliferation of tracking technologies collecting sensitive information, now more***

---

[2] HHS.gov, USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (Mar. 18, 2024).

[3] *Id.* (Emphasis added).



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

> ***than ever, it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule.***[4]

22. Plaintiff and Class Members face the risks about which the government expresses concern. Defendant disclosed the fact that Plaintiff and Class Members booked medical appointments on Defendant's Website, which in turn also discloses the specific reason for the appointment. This information is, as described by the OCR in its bulletin, "highly sensitive."

23. The Bulletin goes on to make clear how broad the government's view of protected information is. It explains:

> This information might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, ***or any unique identifying code***.[5]

24. Crucially, that paragraph in the government's Bulletin continues:

> ***All such [individually identifiable health information ("IIHI")] collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services.*** This is because, ***when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care***.[6]

25. Then, in July 2022, the Federal Trade Commission ("FTC") and the Department of Health and Human Services ("HHS") issued a joint press release warning regulated entities about the privacy and security risks arising from the use of online tracking technologies:

> The Federal Trade Commission and the U.S. Department of Health and Human Services' Office for Civil Rights (OCR) are cautioning hospitals and telehealth providers [regulated entities] about the privacy and security risks related to the use of online tracking technologies integrated into their websites or mobile apps that may be impermissibly disclosing consumers' sensitive personal health data to third parties.

---

[4] *Id.* (Emphasis added).

[5] *Id*. (Emphasis added).

[6] *Id*. (Emphasis added).



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

> "When consumers visit a hospital's [regulated entity's] website or seek telehealth services, they should not have to worry that their most private and sensitive health information may be disclosed to advertisers and other unnamed, hidden third parties," said Samuel Levine, Director of the FTC's Bureau of Consumer Protection. "The FTC is again serving notice that companies need to exercise extreme caution when using online tracking technologies and that we will continue doing everything in our powers to protect consumers' health information from potential misuse and exploitation."
>
> "Although online tracking technologies can be used for beneficial purposes, patients and others should not have to sacrifice the privacy of their health information when using a hospital's [regulated entity's] website," said Melanie Fontes Rainer, OCR Director. "OCR continues to be concerned about impermissible disclosures of health information to third parties and will use all of its resources to address this issue."
>
> The two agencies sent the joint letter to approximately 130 [regulated entities] hospital systems and telehealth providers to alert them about the risks and concerns about the use of technologies, such as the Meta/Facebook pixel and Google Analytics, that can track a user's online activities. These tracking technologies gather identifiable information about users, usually without their knowledge and in ways that are hard for users to avoid, as users interact with a website or mobile app.
>
> In their letter, both agencies reiterated the risks posed by the unauthorized disclosure of an individual's personal health information to third parties. For example, the disclosure of such information could reveal sensitive information including health conditions, diagnoses, medications, medical treatments, frequency of visits to health care professionals, and where an individual seeks medical treatment.
>
> . . . Through its recent enforcement actions against BetterHelp, GoodRx and Premom, as well as recent guidance from the FTC's Office of Technology, the FTC has put companies on notice that they must monitor the flow of health information to third parties that use tracking technologies integrated into websites and apps. The unauthorized disclosure of such information may violate the FTC Act and could constitute a breach of security under the FTC's Health Breach Notification Rule . . . .[7]

26. Therefore, Defendant's conduct is contrary to clear pronouncements by the FTC and HHS.

---

[7] FEDERAL TRADE COMMISSION, FTC AND HHS WARN HOSPITAL SYSTEMS AND TELEHEALTH PROVIDERS ABOUT PRIVACY AND SECURITY RISKS FROM ONLINE TRACKING TECHNOLOGIES, July 20, 2023, https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-hhs-warn-hospital-systems-telehealth-providers-about-privacy-security-risks-online-tracking.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

27. In light of and in addition to the federal government's own issued guidance above, news sources also warn that tracking code, like Google Analytics, poses risks of violating federal privacy law and HIPAA: Federal regulators are warning [regulated entities] hospital systems and telehealth providers about the data privacy risks of using third-party tracking technologies.

> These services, like [Facebook Tracking] Pixel or Google Analytics, could violate the Health Insurance Portability and Accountability Act (HIPAA) or Federal Trade Commission (FTC) data security rules, officials said.
>
> The FTC and the U.S. Department of Health and Human Services' Office for Civil Rights (OCR) issued a rare joint release announcing that 130 [regulated entities] hospital systems and telehealth providers received a letter warning them about the data privacy and security risks related to the use of online tracking technologies integrated into their websites or mobile apps … "The compliance buck still stops with you. Furthermore, your company is legally responsible even if you don't use the data obtained through tracking technologies for marketing purposes."[8]

28. Fierce Healthcare also spoke up in an April 3, 2023 article:

> Nearly all nonfederal acute care hospitals' [regulated entities'] websites track and transfer data to a third party, potentially fueling the unwanted disclosures of patients' sensitive health information and opening up that [regulated entity] hospital to legal liability, according to a recently published University of Pennsylvania analysis. [https://www.healthaffairs.org/doi/full/10.1377/hlthaff.2022.01205]. The census of more than 3,700 hospital [regulated entity] homepages found at least one third-party data transfer among 98.6% of the websites as well as at least one third-party cookie on 94.3%, researchers wrote in Health Affairs.

29. Health Affairs also published an article in April 2023, stating:

> The hospitals' [regulated entities'] homepages had a median of 16 third-party transfers, more of which were found among medium-sized (100 to 499 beds) hospitals, nonprofit hospitals, urban hospitals, health system-affiliated hospitals and those that weren't serving the largest portion of patients in poverty, they wrote … Many of these complaints cite Facebook parent company Meta's Pixel tracker, which a June 2022 investigation from The Markup [https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites] detected on about a third of large hospitals' websites. That report found evidence that, in some instances, the sensitive data transferred to third parties

---

[8] Heather Landi, *Regulators warn hospitals and telehealth companies about privacy risks of Meta, Google tracking tech*, FIERCE HEALTHCARE, July 21, 2023, https://www.fiercehealthcare.com/health-tech/regulators-warn-hospitals-and-telehealth-companies-about-privacy-risks-meta-google.


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

met the criteria for a HIPAA violation.[9]

> By including third-party tracking code on their websites, hospitals [regulated entities] are facilitating the profiling of their patients by third parties. These practices can lead to dignitary harms, which occur when third parties gain access to sensitive health information that a person would not wish to share. These practices may also lead to increased health-related advertising that targets patients, as well as to legal liability for hospitals [regulated entities].[10]

30. This is further evidence that the data that Defendant chose to share is protected PII and PHI. The sharing of that information was a violation of Class Members' rights.

**II. Google's Advertising Technology.**

31. Web browsers are software applications that allow consumers to navigate the internet and view and exchange electronic information and communications. Each device (such as a computer, tablet, laptop, or smartphone) accesses web content through a web browser (e.g. Chrome, Safari, Edge, etc.).

32. Every website is hosted by a computer server that holds the website's contents and through which the entity in charge of the website exchanges communications with the consumer's device via web browsers.

33. Web communications consist of HTTP Requests and HTTP Responses and any given browsing session may consist of thousands of individual HTTP Requests and HTTP Responses, along with corresponding cookies:

- <u>HTTP Request</u>: an electronic communication sent from a device's browser to the website's server. GET Requests are one of the most common types of HTTP Requests. In addition to specifying a particular URL (i.e., web address), GET

---

[9] Dave Muoio, *Almost every hospital's homepage is sending visitors' data to third parties, study finds*, FIERCE HEALTHCARE, Apr. 3, 2023, https://www.fiercehealthcare.com/providers/almost-every-hospital-homepage-sending-visitors-data-third-parties-study-finds.

[10] Ari B. Friedman, et al., *Widespread Third-Party Tracking On Hospital Websites Poses Privacy Risks For Patients And Legal Liability For Hospitals*, HEALTH AFFAIRS, Vol. 42, No. 24, Apr. 2023, https://www.healthaffairs.org/doi/10.1377/hlthaff.2022.01205.


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

Requests can also send data to the host server embedded inside the URL, and can include cookies.

- Cookies: a small text file that can be used to store information on the device which can later be communicated to a server or servers. Cookies are sent with HTTP Requests from devices to the host server. Some cookies are "third-party cookies," which means they can store and communicate data when visiting one website to an entirely different website.
- HTTP Response: an electronic communication that is sent as a reply to the device's web browser from the host server in response to a HTTP Request. HTTP Responses may consist of a web page, another kind of file, text information, or error codes, among other data.

34. A consumers' HTTP Request essentially asks the Website to retrieve certain information (such as scheduling medical appointments), and the HTTP Response renders or loads the requested information in the form of "Markup" (the pages, images, words, buttons, and other features that appear on the patient's screen as they navigate the Website).

35. Every website is comprised of Markup and "Source Code." Source Code is a set of instructions that commands the website visitor's browser to take certain actions when the web page first loads or when a specified event triggers the code.

36. Source Code may also command a web browser to send data transmissions to third parties in the form of HTTP Requests quietly executed in the background without notifying the web browser's user. The tracking technology embedded on the Website by Defendant constitutes Source Code and functions in a substantially similar way.

37. Google is one of the most valuable publicly traded companies in the world with a market capitalization of over $1 trillion dollars. Google fancies itself a "tech" company, but Google, at its core, is an advertising company.

38. Google "make[s] money" from "advertising products [that] deliver relevant ads at just the right time," generating "revenues primarily by delivering both performance advertising



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

and brand advertising."[11] In 2020, Google generated $146.9 billion in advertising revenue, which amounted to more than 80 percent of Google's total revenues for the year. Google generated an even higher percentage of its total revenues from advertising in prior years:

**Figure 1:**

| Year | Total Revenue | Ad Revenue | % Ad Revenue |
|---|---|---|---|
| 2021 | $257.6 billion | $209.5 billion | 81.33% |
| 2020 | $182.5 billion | $146.9 billion | 80.49% |
| 2019 | $161.9 billion | $134.8 billion | 83.29% |
| 2018 | $136.8 billion | $116.5 billion | 85.12% |

39. Google offers several analytics products, including SDKs and a tracking pixel, which exist solely to help drive ad revenue. For instance, Google's SDK and pixel integrate with Google's advertising offerings, such as Google Ads, Search Ads 360, Google Cloud, and Google Ad Manager, to direct more individuals to use Google's ad network and products increasing Google's overall ad revenue. Products like Google's SDK and its tracking pixel also improve the company's advertising network and capabilities by providing more wholesome profiles and data points on individuals.

40. One of these SDKs and tracking pixels is Google Analytics. Google first launched a version of Google Analytics in 2005 as a tool for website traffic analysis. In 2007, Google launched Google Analytics Synchronous code with new tracking functionality, such as the ability to track commerce transactions. Two years later, Google launched the Google Analytics Asynchronous code, which allowed webpages to load faster and improved data collection and accuracy.

41. Google continued updating its analytics platform, launching Universal Analytics in 2012. Universal Analytics offered new tracking codes and tools that provided more in-depth information about user behavior. Also, Universal Analytics enabled tracking the same user across multiple devices through its addition of the User-ID feature, which "associate[s] a

---

[11] ALPHABET INC., ANNUAL REPORT (FORM 10-K) (Feb. 2, 2021), available at https://www.sec.gov/Archives/edgar/data/1652044/000165204421000010/goog-20201231.htm.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

persistent ID for a single user with that user's engagement data from one or more sessions initiated from one or more devices."

42. In 2020, Google launched Google Analytics 4, a platform combining Google Analytics with Firebase to analyze both app and web activity.

43. Since launching Google Analytics, Google has become one of the most popular web analytics platforms on the internet. Indeed, Google had a $62.6 billion increase in advertising revenues in 2021, compared to 2020, after launching its most recent version of Google Analytics.

44. Google touts Google Analytics as a marketing platform that offers "a complete understanding of your customers across devices and platforms."[12] It allows companies and advertisers that utilize it to "understand how your customers interact across your sites and apps, throughout their entire lifestyle," "uncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data," "take action to optimize marketing performance with integrations across Google's advertising and publisher tools," and "quickly analyze your data and collaborate with an easy-to-use interface and shareable reports."[13]

45. Google Analytics is incorporated into third-party websites and apps, including the Website, by adding a small piece of JavaScript measurement code to each page on the site. This code immediately intercepts a user's interaction with the webpage every time the user visits it, including what pages they visit and what they click on. The code also collects PII, such as IP addresses, User IDs, and device information related to the specific computing device a consumer is using to access a website. The device information intercepted by Google includes the patient's operating system, operating system version, browser, language, and screen resolution.

---

[12] *Analytics*, GOOGLE, https://marketingplatform.google.com/about/analytics/.

[13] *Id.*



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

46. In other words, when interacting with the Website, an HTTP Request is sent to Defendant's server, and that server sends an HTTP Response including the Markup that displays the website visible to the patient and Source Code, including Google's tracking technologies.

47. Thus, Defendant is essentially handing its patients a tapped device, and once the webpage is loaded onto the individual's browser, the software-based wiretap is quietly waiting for private communications on the Website to trigger the tap, which intercepts those communications intended only for Defendant and transmits those communications to third parties like Google.

48. Once Google's software code collects the data intercepted from the Website, it packages the information and sends it to Google Analytics for processing. Google Analytics enables the company or advertiser to customize the processing of the data, such as applying filters. Once the data is processed, it is stored on a Google Analytics database and cannot be changed.

49. After the data has been processed and stored in the database, Google uses this data to generate reports to help analyze the data from the webpages. These include reports on acquisition (e.g., information about where your traffic originates, the methods by which users arrive at your site or app, and the marketing efforts you use to drive traffic), engagement (e.g., measure user engagement by the events and conversion events that users trigger and the web pages and app screens that user visits, and demographics (e.g., classify your users by age, location, language, and gender, along with interests they express through their online browsing and purchase activities).

50. In addition to using the data collected through Google Analytics to provide marketing and analytics services, Google also uses the data collected through Google Analytics to improve its ad targeting capabilities and data points on users.

51. The Website utilizes Google's pixel and SDK. As a result, through Google Analytics, Defendant intercepted its patients' interactions on the Website and disclosed those interactions to Google, including those that contained their PII and PHI. Google received at least



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

"Custom Events" and URLs that disclosed the medical appointments scheduled by Defendant's patients. Google also received additional PII, including the patients' IP address, device information, and User-IDs.

52. In addition to User-IDs, upon receiving information from the Website, Google also utilizes a "browser-fingerprint" to personally identify consumers. A browser-fingerprint is information collected about a computing device that is used to identify the specific device.

53. These browser-fingerprints are used to uniquely identify individual users when a computing device's IP address is hidden or cookies are blocked and can provide a wide variety of data.

54. As Google explained, "[w]ith fingerprinting, developers have found ways to use tiny bits of information that vary between users, such as what device they have or what fonts they have installed to generate a unique identifier which can then be used to match a user across websites."[14]

55. The value of browser-fingerprinting to advertisers (and trackers who want to monetize aggregated data) is that they can be used to track website users just as cookies do, but it employs much more subtle techniques.[15] Additionally, unlike cookies, users cannot clear their fingerprint and therefore cannot control how their personal information is collected.

56. In 2017, researchers demonstrated that browser fingerprinting techniques can successfully identify 99.24 percent of all users.[16]

57. Browser-fingerprints are personal identifiers. Tracking technologies, like the ones developed by Google and utilized on the Website, can collect browser-fingerprints from website visitors.

---

[14] https://www.blog.google/products/chrome/building-a-more-private-web/

[15] https://www.pixelprivacy.com/resources/browser-fingerprinting/

[16] https://ndss-symposium.org/ndss2017/ndss-2017-programme/cross-browser-fingerprinting-os-and-hardware-level-features/



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

58. As enabled by Defendant, Google collects vast quantities of consumer data through its tracking technology.

59. Due to the vast network of consumer information held by Google, it is able to match the IP addresses, device information, and User-IDs and link such information to an individual's specific identity.

60. Google then utilizes such information for its own purposes, such as targeted advertising.

**III. Defendant Violates the Privacy Rights of its Patients.**

61. Defendant understands that the information transmitted on its Website is protected and confidential. Unfortunately, Defendant does not comply with its legal obligations to protect such information from disclosure.

62. Unbeknownst to its patients, Defendant embedded Google's tracking technologies onto the Website. Through these tracking technologies, Defendant intercepted its patients' communications when they scheduled medical appointments and disclosed such information to Google.

63. For example, when patients schedule medical appointments through its Website, Defendant immediately intercepts and discloses their interactions to Google:



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

**Figure 2:**

| | |
|---|---|
| tag_exp | 101509157~103116026~103200004~103233427~103351869~103351871~104684208~104684211~104908321~104908323~104909302~104909304~104935091~104935093 |
| cid | 2031237196.1752244976 |
| ul | en-us |
| sr | 2560x1440 |
| ir | 1 |
| uaa | x86 |
| uab | 64 |
| uafvl | Not)A%3BBrand;8.0.0.0\|Chromium;138.0.7204.97\|Google%20Chrome;138.0.7204.97 |
| uamb | 0 |
| uam | |
| uap | Windows |
| uapv | 15.0.0 |
| uaw | 0 |
| are | 1 |
| frm | 0 |
| pscdl | noapi |
| _eu | EAAAAAQ |
| _s | 6 |
| sid | 1752244975 |
| sct | 1 |
| seg | 1 |
| dl | https://www.zoomcare.com/ |
| dt | ZoomCare \| Beyond Better Healthcare |
| en | select_promotion |
| _ee | 1 |
| ep.creative_name | condition_selector_common |
| ep.creative_slot | default_global |
| ep.promotion_name | Genital Herpes |
| _et | 11379 |
| tfd | 379770 |



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

**Figure 3:**

<table>
<tr><th>Query String Parameters</th><th>View source View URL-encoded</th></tr>
<tr><td>random</td><td>1752245731435</td></tr>
<tr><td>cv</td><td>11</td></tr>
<tr><td>fst</td><td>1752245731435</td></tr>
<tr><td>bg</td><td>ffffff</td></tr>
<tr><td>guid</td><td>ON</td></tr>
<tr><td>async</td><td>1</td></tr>
<tr><td>gtm</td><td>45be5791v892706008z8836159649za200zb836159649</td></tr>
<tr><td>gcd</td><td>13l3l3l3l1l1</td></tr>
<tr><td>dma</td><td>0</td></tr>
<tr><td>tag_exp</td><td>101509157~103116026~103200004~103233427~103351869~103351871~104684208~104684211~104909302~104909304~104935091~104935093</td></tr>
<tr><td>u_w</td><td>2560</td></tr>
<tr><td>u_h</td><td>1440</td></tr>
<tr><td>url</td><td>https://www.zoomcare.com/schedule?visitTypeId=5ME2DR&reasonForVisit=Genital%20Herpes&gaClientId=2031237196.1752244976&gaSessionId=1752244975</td></tr>
<tr><td>ref</td><td>https://www.zoomcare.com/</td></tr>
<tr><td>hn</td><td>www.googleadservices.com</td></tr>
<tr><td>frm</td><td>0</td></tr>
<tr><td>tiba</td><td>ZoomCare | Schedule a Healthcare Appointment</td></tr>
<tr><td>npa</td><td>0</td></tr>
<tr><td>pscdl</td><td>noapi</td></tr>
<tr><td>auid</td><td>1191082731.1752244976</td></tr>
<tr><td>uaa</td><td>x86</td></tr>
<tr><td>uab</td><td>64</td></tr>
<tr><td>uafvl</td><td>Not)A%3BBrand;8.0.0.0|Chromium;138.0.7204.97|Google%20Chrome;138.0.7204.97</td></tr>
<tr><td>uamb</td><td>0</td></tr>
<tr><td>uam</td><td></td></tr>
<tr><td>uap</td><td>Windows</td></tr>
<tr><td>uapv</td><td>15.0.0</td></tr>
<tr><td>uaw</td><td>0</td></tr>
<tr><td>fledge</td><td>1</td></tr>
<tr><td>_tu</td><td>Cg</td></tr>
<tr><td>rfmt</td><td>3</td></tr>
<tr><td>fmt</td><td>4</td></tr>
</table>

64. Such disclosures contain information related to the medical appointment being scheduled by Defendant's patients, including the medical condition being treated. The same disclosures occurred when Plaintiff scheduled her medical appointments through Defendant's Website. In other words, when Plaintiff scheduled her medical appointments, Defendant disclosed to Google that Plaintiff was scheduling medical appointments for her broken hand and a cold for targeted advertising purposes in violation of HIPAA.

65. This allows both Defendant and Google to profit from these unlawful disclosures.

66. Defendant further assisted Google by disclosing the PII of its account holders sufficient for Google to uncover their identities. In the HTTP communications shown above, like Figures 2-3, the patient's IP address is inherently included in every network request. In addition to its patients' IP addresses, Defendant, through Google's tracking technologies, disclosed information about their specific devices and User-IDs to Google, allowing Google to link such information to a patient's specific identity.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

67. As shown above, Plaintiff's communications with Defendant were disclosed by Defendant to Google and/or intercepted in transit, in real time, via detailed URLs, which contain the medically sensitive information and personally identifiable information entered into the Website.

68. Defendant also uses and causes the disclosure of data sufficient for Google to create a browser-fingerprint identifier with each re-directed communication described herein, including patient communications concerning individual medical appointments.

69. Defendant sent these identifiers with each individual's "event" data.

70. Such event data includes the specific medical appointments scheduled by Defendant's patients.

71. When individuals share their personal information when seeking medical treatment, they expect this information to be kept confidential. Moreover, when consumers seek a specific treatment from healthcare professionals, they also expect this highly sensitive information to be kept confidential.

72. If patients knew that Defendant was sharing their personal information for targeted advertising purposes, they would not utilize the Website. Through Google's tracking technologies, which Defendant used via the software code installed, integrated and embedded into the Website, Defendant disclosed its patients' legally protected PII and PHI.

73. Defendant engages in this deceptive conduct for its own profit at the expense of its patients' privacy. Such disclosures are an invasion of privacy, lead to harassing targeted advertising, and violate federal and state law.

## CLASS ALLEGATIONS

74. **Class Definition**: Plaintiff brings this action on behalf of herself and a class defined as all persons in the United States who, during the class period, scheduled a medical appointment on https://www.zooomcare.com (the "Class").

75. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

76. **Numerosity**: On information and belief, at least thousands of consumers fall into the definition of the Class. Members of the Class can be identified through Defendant's records, discovery, and other third-party sources.

77. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a. whether Defendant intentionally assisted a third party with tapping the lines of internet communication between itself and customers;

b. Whether Defendant's Website surreptitiously recorded PII, PHI, and related communications itself and its customers;

c. Whether Google was a third-party eavesdropper;

d. Whether Defendant's disclosures of PII, PHI, and related communications constituted an affirmative act of communication;

e. Whether Defendant violated Plaintiff's and Class Members' privacy rights by using Google's tracking technologies to record and communicate their PII alongside their confidential medical communications; and

f. Whether Plaintiff and Class Members are entitled to damages under the ECPA, or any other relevant statute.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

78. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendant's wrongful conduct.

79. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Classes.

80. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's actions that Plaintiff challenges apply and affect members of the Class uniformly, and Plaintiff's challenge of these actions hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same.

81. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Class is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendant's wrongful conduct. Absent a class action, it would be difficult if not impossible for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

all parties and the Court and require duplicative consideration of the legal and factual issues presented. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

82. Plaintiff reserves the right to revise the "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violation of the Electronic Communications Privacy Act,**
**18 U.S.C. § 2511(1)**
**(On behalf of Plaintiff and the Class)**

83. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

84. The Electronic Communications Privacy Act ("ECPA") prohibits the intentional interception of the content of any electronic communication. 18 U.S.C. § 2511.

85. The ECPA protects both sending and the receipt of communications.

86. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

87. The transmission of Plaintiff's private and confidential information to Defendant's Website qualify as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

88. The transmission of the private and confidential information between Plaintiff and Class Members and Defendant's Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

89. The ECPA defines "contents," when used with respect to electronic



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. 18 U.S.C. § 2510(8).

90. The ECPA defines an interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

91. The ECPA defines "electronic, mechanical, or other device," as "any device…which can be used to intercept a[n]…electronic communication[.]" 18 U.S.C. § 2510(5).

92. The following instruments constitute "devices" within the meaning of the ECPA:

a. The computer codes and programs Google used to track Plaintiff and Class Members communications while they were navigating the Website;

b. Plaintiff's and Class Members' browsers;

c. Plaintiff's and Class Members' mobile devices;

d. Defendant and Google's web and ad servers;

e. The plan Defendant and Google carried out to effectuate the tracking and interception of Plaintiff's and Class Members' communications while they were using a web browser to navigate the Website.

93. Plaintiff and Class Members' interactions with Defendant's Website are electronic communications under the ECPA.

94. By utilizing and embedding the Google tracking technologies on its Website, Defendant intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members in violation of 18 U.S.C. § 2511(1)(a).

95. Specifically, Defendant, through Google's tracking technologies, intercepted Plaintiff's and Class Members' electronic communications, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' private and confidential information to third parties,



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

such as Google.

96. Defendant intercepted communications that include, but are not necessarily limited to, communications to/from Plaintiff and Class Members regarding private and confidential information, including their IP addresses, device information, and User-IDs and treatment information. This confidential information was then monetized for targeted advertising purposes.

97. By intentionally disclosing or endeavoring to disclose Plaintiff's and Class Members' electronic communications to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

98. By intentionally using, or endeavoring to use, the contents of Plaintiff's and Class Members' electronic communications, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

99. Defendant intentionally intercepted or intentionally assisted in the interception of the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, HIPAA and invasion of privacy, among others.

100. The party exception in 18 U.S.C. § 2511(2)(d) does not permit a party that intercepts or causes interception to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State. Here, as alleged above, Defendant violated a provision of the Health Insurance Portability and Accountability Act, specifically 42 U.S.C. § 1320d-6(a)(3). This provision imposes a criminal penalty for knowingly disclosing individually identifiable health information ("IIHI") to a third party. HIPAA defines IIHI as:

> any information, including demographic information collected from an individual,



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

> that—(A) is created or received by a health care provider ... (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.[17]

101. Plaintiff's information that Defendant intercepted qualifies as IIHI, and Defendant violated Plaintiff's and Class Members' expectations of privacy. Such conduct constitutes tortious and/or criminal conduct through a violation of 42 U.S.C. § 1320d-6. Defendant used the wire or electronic communications to increase its profit margins. Defendant specifically used Google's tracking technologies to track and utilize Plaintiff's and Class Members' private and confidential information for financial gain.

102. Defendant was not acting under the color of law to intercept Plaintiff's and Class Members' wire or electronic communications.

103. Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy through Google's tracking technologies. Plaintiff and Class Members had a reasonable expectation that Defendant would not intercept or assist in the interception of their private and confidential information without their knowledge or consent.

104. The foregoing acts and omission therefore constitute numerous violations of 18 U.S.C. § 2511(1), *et seq.*

105. As a result of each and every violation thereof, on behalf of herself and the Class, Plaintiff seeks statutory damages of the greater of $10,000 or $100 per day for each violation of 18 U.S.C. § 2510, *et seq.* under 18 U.S.C. § 2520.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter an Order:

[17] 42 U.S.C. § 1320d-6.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as class counsel;

b) Declaring that Defendant's conduct, as set out above, violates the ECPA;

c) Awarding statutory damages for each violation of the ECPA;

d) Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to comply with ECPA;

e) Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

f) Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

g) Awarding such other and further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**Laura Nichols**, individually and on behalf of all others similarly situated,

Dated: March 25, 2026

By: */s/ Wright A. Noel*

One of Plaintiff's Attorneys

Wright A. Noel
wright@carsonnoel.com
CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel: 425.837.4717
Fax: 425.837.5396

Alec M. Leslie*
aleslie@bursor.com

BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 646.837.7150
Fax: 212.989.9163

**Pro hac vice* admission to be sought.

*Attorneys for Plaintiff and the Putative Class*