THE HONORABLE JOHN H. CHUN

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| LAURA NICHOLS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEACEHEALTH NETWORKS ON DEMAND, LLC, d/b/a ZOOMCARE, a Washington limited liability company,<br><br>Defendant. | Case No. 2:25-cv-01831-JHC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT PEACEHEALTH NETWORKS ON DEMAND, LLC'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>June 17, 2026 |



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

# TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........................................ 1

LEGAL STANDARD ........................................ 2

ARGUMENT ........................................ 3

I. PLAINTIFF SUFFICIENTLY STATES A CLAIM UNDER THE ECPA ........................................ 3

A. Defendant Possessed an Independent Criminal Purpose of Violating HIPAA ........................................ 3

B. Defendant's Actions Constitute a Tortious Invasion of Privacy ........................................ 5

1. Plaintiff's amended allegations identify the PHI disclosed. ........................................ 7

2. The alleged harm is unrelated to the receipt of targeted advertising. ........................................ 9

3. Pecuniary motivation does not insulate tortfeasors from liability. ........................................ 10

C. The 'Contents' of Plaintiff's Communications Were Intercepted ........................................ 11

CONCLUSION ........................................ 13




CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.J. v. LMND Med. Grp., Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024)....10

*Allison v. PHH Mortgage*,
2026 WL 1353827 (N.D. Cal. May 14, 2026)....5, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....2

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)....8

*B.N. v. Oregon Reproductive Medicine, LLC*,
2026 WL 915343 (D. Or. Apr. 3, 2026)....4, 9, 11

*Beckington v. Am. Airlines, Inc.*,
926 F.3d 595 (9th Cir. 2019)....9

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....11

*Camm v. Reach Fin., LLC*,
2026 WL 861670 (S.D.N.Y. Mar. 30, 2026)....4

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)....7, 8, 10, 12

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023)....7

*Doe v. Baystate Heal System, Inc.*,
2026 WL 776861 (D. Mass. Mar. 19, 2026)....3

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp 3d 814 (E.D. Cal. 2025)....3, 7, 12

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025)....9

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025)....8, 10



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026)....6

*Garcia v. Truist Fin. Corp.*, --- F. Supp. 3d. ----, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026)....6, 7, 9

*Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026)....7

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002)....2

*Hassid v. Alex & Ani, LLC*, 816 F. Supp. 3d 1196 (C.D. Cal. 2026)....9

*I.T. v. ChoicePoint LLC*, 2025 WL 2495079 (W.D. Wash. Aug. 29, 2025)....3, 8

*In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021)....6

*In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015)....12

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)....5

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d. Cir. 2015)....5, 8

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022)....1, 10, 11

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d. Cir. 2016)....12

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014)....11

*K.L. v. Legacy Health*, 2024 WL 4794657 (D. Or. Nov. 14, 2024)....7

*Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026)....7

*M.G. v. Therapymatch, Inc.*, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)....12

*M.G. v. Therapymatch, Inc.*, 2025 WL 1447432 (N.D. Cal. May 19, 2025)....12



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*McClain v. Capital Vision Servs., LLC*,
2026 WL 710926 (N.D. Ill. Mar. 13, 2026) ........................................................................4, 5

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ..........................................................................12

*Nguyen v. Abbott Laboratories, Inc*.,
2026 WL 579206 (N.D. Ill. Mar. 2, 2026) ....................................................................8, 9

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026)..............................................................4, 5, 8

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025)................................................................5, 8

*Norman-Bloodsaw v. Lawrence Berkeley*,
Lab., 135 F.3d 1260 (9th Cir. 1998)...............................................................................6

*Pena v. Gamestop, Inc.*,
670 F. Supp. 3d 1112) (S.D. Cal. 2023)..........................................................................5

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)...................................................................................3, 5

*R.C. v. Walgreens Co.*,
733 F. Supp. 3d 876 (C.D. Cal. May 9, 2024)...........................................................6, 7, 12

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025).............................................................3, 4, 7, 11

*Ramirez v. LasikMD USA, Inc.*,
2026 WL 194855 (S.D. Cal. Jan. 26, 2026) ....................................................................10

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)......................................................................3, 10

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017)...................................................................................13

*Rusow v. Skinspirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025)....................................................................6

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026)...............................................................7, 10

*Smart v. Main Line Health*,
2026 WL 1008171 (E.D. Pa. Apr. 14, 2026).......................................................................4

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025).............................................................5, 7, 10, 12



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .....3

*Vriezen v. Infinite Health Collaborative, P.A.*,
2025 WL 2992204 (D. Minn. Sept. 30, 2025).....4

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021).....12

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .....11

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .....10

**STATUTES**

18 U.S.C. § 2511 .....3

42 U.S.C. § 1320d-6(a)(3) .....7

**RULES**

Fed. R. Civ. P. 8(a)(2) .....2

Fed. R. Civ. P. 15(a)(2) .....13

Fed. R. Civ. P. 12(b)(6) .....2

**REGULATIONS**

45 C.F.R. § 160.103.....1



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

**INTRODUCTION**

Defendant Peacehealth Networks On Demand, LLC d/b/a ZoomCare ("Defendant") operates a national chain of primary and urgent care medical facilities. *See* First Amended Complaint (ECF No. 17) at ¶ 1 ("FAC"). Defendant encourages its patients to book appointments through its website, https://www.zoomcare.com/ (the "Website"). *Id.* ¶ 2. Plaintiff Laura Nichols ("Plaintiff") visited Defendant's Website for precisely that purpose; to book (and attend) appointments to treat a broken hand and address a cold, respectively. *Id.* ¶ 7.

Unbeknownst to its patients, including Plaintiff, Defendant discloses information related to their medical appointments to Google. Such information is not shared for the purpose of providing treatment. *Id.* ¶¶ 8, 13, 64, 73, 96. Instead, the information Defendant intercepts and discloses to Google is not only utilized for Defendant's benefit, but also for Google's own independent use. *Id.* ¶ 37–39, 60. Defendant discloses this information to Google without patients' consent or written authorization, despite the fact that this information is protected by federal law. *Id.* ¶¶ 14, 103.

As a HIPAA covered entity, Defendant has a duty to protect the health information it receives. HIPAA defines "protected health information" as "individually identifiable" information that is "created or received by a health care provider" (or similar entities) that "[r]elates to the past, present, or future physical or mental health or condition of an individual" or the "provision of health care to an individual." 45 C.F.R. § 160.103; FAC ¶ 100. Courts throughout the Ninth Circuit recognize "information which shows patient-status constitutes protected health information." *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022). This is true regardless of whether the individual has a preexisting relationship with the regulated entity.

The First Amended Complaint details exactly how the Google tracking technologies function: every time a patient interacts with the Website, including when Plaintiff booked her respective health appointments, Defendant intercepts and discloses to Google the patients' personally identifiable information ("PII") and contents of their communication in the form of custom events and detailed URLs. *See e.g.,* FAC ¶ 51, 61–73. Plaintiff, having never authorized or consented to the disclosure of her communications to Google, had no reason to expect that her


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

protected health information ("PHI") would be disclosed to one of the largest advertising companies in the world. *Id.* ¶¶ 3, 71, 101, 103. Defendant's conduct, as alleged in the Amended Complaint, violates state and federal law.

This action seeks to hold Defendant accountable for its intentional interception, recording, and exploitation of Plaintiff's and class members' private and legally protected information related to their medical appointments. Defendant's Motion to Dismiss ("MTD") does not grapple with Plaintiff's well-pled allegations. ECF No. 25. Rather, it relies on misstatements of law and mischaracterizations of fact. Plaintiff has adequately alleged that her PHI was disclosed as the FAC now includes the details of her medical appointment bookings. She actually booked and attended her medical appointments; as such, it is undeniable that the interception and subsequent disclosure of her PHI was a criminal act. Moreover, the information disclosed was not merely record information. To the contrary, Defendant discloses to Google the appointment details, including the medical issue to be addressed, of every patient. This represents an egregious betrayal of patient trust. Defendant's Motion to Dismiss should be denied in full.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Ashcroft*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

## I. PLAINTIFF SUFFICIENTLY STATES A CLAIM UNDER THE ECPA

### A. Defendant Possessed an Independent Criminal Purpose of Violating HIPAA

According to Defendant, Plaintiff "does not, and cannot, plead any new facts demonstrating an unlawful act that is separate and secondary to" the underlying interception of her PHI. MTD at 7. Therefore, in Defendant's view, Plaintiff cannot invoke the crime-tort exception to state a claim under the ECPA. Defendant is incorrect as this argument plainly ignores the allegations.

Plaintiff does not challenge whether Defendant was a party to the underlying communications. Therefore, the "crux of the parties' disagreement on this claim . . . centers on whether the crime-tort exception applies." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025). The text of 18 U.S.C. § 2511 codifies the crime-tort exception as an "intercept[ion]," where "such an interception . . . is intercepted for the purpose of committing any criminal or tortious act." The Ninth Circuit has clarified that "[t]his criminal or tortious purpose must be separate and independent from the act of recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (citing *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). "Multiple courts have rejected th[e] argument" that an alleged HIPAA violation and ECPA violation are "one and the same." *I.T. v. ChoicePoint LLC*, 2025 WL 2495079, at *8 (W.D. Wash. Aug. 29, 2025) ("[A]n intent to disclose or use privation information in violation of HIPAA is distinct from the interception.") (collecting cases); *accord Doe v. Tenet Healthcare Corp.*, 789 F. Supp 3d 814, 849 (E.D. Cal. 2025) (finding allegations of interceptions in violation of HIPAA sufficient to allege crime-tort exception).

Rather, courts have distinguished underlying interceptions from intentional disclosures of information. *See R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025) ("R.S. does not allege that Prime Healthcare's interception *itself* violated HIPAA. Instead, R.S. asserts that the violation stems from Prime Healthcare's intentional *disclosure* . . . which constitutes a 'further impropriety' independent and separate from Prime Healthcare's *interception*.") (emphasis in original); *Doe v. Baystate Heal System, Inc.*, 2026 WL 776861, at *5


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

(D. Mass. Mar. 19, 2026) (finding defendant's intent was "to disclose confidential medical information to Meta and Google" rather than merely intercept the same). This distinguishment occurs regardless of whether 'interception' and 'disclosure' occurred at the same time. *See R.S.*, 2025 WL 103488, at *6 ("It is irrelevant that Prime Healthcare allegedly disclosed the Private Information at the same time as its interception.").

As explained by one district court:

> After the Meta Collection Tools captured the contents of user communications, Main Line Health shared that information to allow marketers and advertisers to make targeted outreach to users. Just because those acts happen at nearly the same time does not mean the act is singular. Consider, for instance, a basketball player that attempts a free throw. At one descriptive level, her action is singular: she merely shoots the ball. At another descriptive level, her action is complex, comprising multiple acts in one fluid motion . . . . Main Line Health's description is too general, reducing the many into one. The use of the intercepted communications is distinct from the capture of those communications.

*Smart v. Main Line Health*, 2026 WL 1008171, at *3 (E.D. Pa. Apr. 14, 2026).

As such, "the weight of authority . . . nationwide holds that [a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA." *McClain v. Capital Vision Servs., LLC*, 2026 WL 710926, at *4 (N.D. Ill. Mar. 13, 2026) (internal quotations omitted) (collecting cases); *see also B.N. v. Oregon Reproductive Medicine, LLC*, 2026 WL 915343, at *3 (D. Or. Apr. 3, 2026) (holding the same); *Vriezen v. Infinite Health Collaborative, P.A.*, 2025 WL 2992204, at *8 (D. Minn. Sept. 30, 2025) (finding the disclosure of PHI being a separate, independent act a "plausibly pled" theory); *Camm v. Reach Fin., LLC*, 2026 WL 861670, at *5 (S.D.N.Y. Mar. 30, 2026) (stating that the "act of disclosure and use" is "distinct from its interception").

Here, in the Court's previous Order (ECF No. 16) (the "Order"), it was emphasized that "the question before the Court is not whether ECPA's crime-tort exception could ever apply to a disclosure of PHI from Defendant's Website to an unauthorized third party[.]" *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *3 (W.D. Wash. Mar. 4, 2026) (Chun, J.). Rather, the differing results observed in other medical-related ECPA lawsuits stemmed


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

from the "differences in the parties' actual pleadings, particularly with respect to whether the complaint pleads a HIPAA violation[.]" *Id.* And yet, Defendant continues to contend that Plaintiff's ECPA claim fails because the "alleged tortious or criminal use of the acquired communication is the disclosure itself." MTD at 10–11 (quoting *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025)). As stated *supra*, this is not well-settled law. And Defendant's other authorities are even more attenuated. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d. Cir. 2015), *declined to follow by In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (contemplating completely different methodology of wiretapping); *Pena v. Gamestop, Inc.*, 670 F. Supp. 3d 1112, 1119–20) (S.D. Cal. 2023) (relying on *In re Google Cookie Placement*). Rather, Defendant's authorities represent the minority viewpoint when compared to the overwhelming weight of authority. *See McClain*, 2026 WL 710926, at *4 (the national weight of authority holds a "disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA."). Plaintiff's allegations squarely emphasize this crucial distinction. *See* FAC ¶ 51 ("[T]hrough Google Analytics, Defendant ***intercepted*** its patients' interactions on the Website and ***disclosed*** those interactions to Google") (emphasis added); *id.* ¶¶ 62–63 (same).

**B. Defendant's Actions Constitute a Tortious Invasion of Privacy**

Assuming, *arguendo*, that Defendant can prove it did not act for the "purpose" of violating HIPAA (it cannot), Defendant makes no effort in its defense that it did not act for the purpose of tortiously invading Plaintiff's privacy.[1]

The FAC makes clear that Defendant acted "for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely,

---

[1] That Plaintiff did not plead a cause of action for invasion privacy does not foreclose her from arguing the crime-tort exception nonetheless applies. The focus is on Defendant's purpose. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) ("Rack Room's alleged disclosure and use of Plaintiffs' personally identifiable information for advertising . . . can plausibly constitute a further invasion of privacy beyond the act of intercepting"); *see also Allison v. PHH Mortgage*, 2026 WL 1353827, at *11 (N.D. Cal. May 14, 2026) (finding the crime-tort exception met where plaintiff "plausibly allege[d] that PHH acted with the purpose of committing an invasion of privacy tort[,]" where no cause of action was brought).


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

HIPAA **and invasion of privacy**[.]" FAC ¶ 99 (emphasis added). At common law, a tortious invasion of privacy based on intrusion upon seclusion occurs when there is "(1) an intrusion into a private place, conversation, or matter, [and] (2) in a manner highly offensive to a reasonable person." *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *4 (C.D. Cal. Apr. 1, 2026). First, it is well-established in this Circuit that individuals possess a reasonable expectation of privacy over their medical information. *See, e.g.*, *Rusow v. Skinspirit Essential LLC*, 2025 WL 4657637, at *13 (N.D. Cal. Oct. 15, 2025) ("Courts frequently hold that patients have a reasonable expectation of privacy over their medical information. This Court also recognizes the same reasonable expectation") (cleaned up); *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up."). Second, whether an intrusion is "highly offensive . . . requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Garcia v. Truist Fin. Corp.*, --- F. Supp. 3d. ----, 2026 WL 972328, at *12 (C.D. Cal. Mar. 25, 2026).

Here, the facts readily demonstrate that Plaintiff was seeking medical services on Defendant's Website. *See* FAC ¶ 7 ("Plaintiff booked a medical appointment through Defendant's Website for treatment related to her broken hand. Plaintiff made another medical appointment . . . for treatment related to a cold."); *id.* ¶ 13 ("Defendant provides in-person medical services and treatment at its forty-five clinics"); *id.* ¶ 64 (describing that Google receives medical appointment details). HIPAA aside, the type of information at hand gives rise to an objectively reasonable expectation of privacy. *See R.C. v. Walgreens Co.*, 733 F. Supp. 3d 876, 889–90 (C.D. Cal. May 9, 2024) (finding "health-related purchases" outside the purview of HIPAA sufficient to state invasion of privacy claim). And while "courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious [a] privacy intrusion is," the disclosure of health information flouts social norms. *Rusow*, 2025 WL 4657637, at *14 (citations omitted); *see also In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (stating that


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

"Courts have refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here, a data breach involved medical information").

Rather than meaningfully address this, Defendant ignores Plaintiff's allegations. Indeed, Plaintiff's allegations are squarely in line with numerous cases which have held that allegations of tortious purpose, based on common law privacy torts, are sufficient to invoke the crime-tort exception under the ECPA. *See, e.g.*, *R.C.*, 733 F. Supp. 3d at 901–02 (finding invasion of privacy sufficient to invoke crime-tort exception); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 869 (N.D. Cal. 2026) (same); *Allison*, 2026 WL 1353827, at *11 (same); *Garcia*, 2026 WL 972328, at *10 (same); *Smith*, 2025 WL 2210002, at *5 (same); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (same); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *10 (N.D. Cal. Jan. 27, 2026) (same); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) (finding tortious breach of confidence sufficient to invoke crime-tort exception).

**1. <u>Plaintiff's amended allegations identify the PHI disclosed.</u>**

Defendant glosses over Plaintiff's amended allegations, labeling them as "conclusory." MTD at 12. According to Defendant, the exact purpose of each medical appointment scheduled—and later attended—does nothing to convey "what information about these medical appointments was 'disclosed' to Google." *Id.* at 13. That is wrong.

"HIPAA makes it a federal crime to disclose 'individually identifiable health information.'" *Doe*, 789 F. Supp. 3d at 849 (citing 42 U.S.C. § 1320d-6(a)(3)). Individually identifiable health information ("IIHI") encompasses the entire expanse of information "created or received by [a] covered entity that 'relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual . . . or future payment for the provision of health care[.]" *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024) (citation omitted). Courts have found a wide breadth of information as constituting IIHI. *See, e.g.*, *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023) (finding a "[web] search for a primary care physician" coupled with filtering results by "specialty" sufficient); *R.S.*, 2025 WL 103488, at *5 (holding that "medical conditions, treatment details, appointment information" is IIHI). Further, whether PHI is "provided through a public webpage or patient


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

portal is 'immaterial.'" *I.T.*, 2025 WL 2495079, at *8 (citing *Castillo*, 2024 WL 4785136, at *7)). And even *Nienaber* recognized that appointment details containing the treatment sought constituted IIHI. 2025 WL 692097, at *6.

The Court's Order held that Plaintiff "d[id] not specify what HIPAA-protected information was allegedly disclosed." *Nichols*, 2026 WL 607763, at *4. Plaintiff has remedied this. Specifically, Plaintiff now alleges that she booked an appointment on March 26, 2025 to treat a broken hand. FAC ¶ 6. A second appointment was booked on April 30, 2025 in relation to remedying Plaintiff's cold. *Id.* This represents IIHI, as it squarely relates to Plaintiff's "past, present, or future" health condition. *See id.* ¶¶ 100–01. Moreover, by pairing this information with Plaintiff's Google User-ID, the information is identifiable to Plaintiff specifically. *See id.* ¶ 41 (describing the "persistent ID for a single user" Google utilizes); *id.* ¶ 52 (describing Google's browser-fingerprint process); *id.* ¶ 66 (Google can identify users because every HTTP communication contains an IP address and unique User-ID). The use of unique User-IDs, contrary to Defendant's argument, *does* identify Plaintiff in her capacity as a patient. *See* MTD at 13; *see also Nienaber*, 2025 WL 692097, at *5 (finding the disclosure of a Facebook ID identified the plaintiff); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *4 (C.D. Cal. Jan. 30, 2025) (same). In short, Plaintiff's amended allegations demonstrate the exact appointment details that were disclosed to Google. Specifically, Google received 'Custom Events' and full-string URLs containing the precise health treatment Plaintiff sought. *See* FAC ¶ 51; *see also* Figs. 2–3 (visual traffic of URL and event data). That is sufficient.

The cases relied on by Defendant largely do not relate to whether Plaintiff has sufficiently pleaded her PHI/IIHI was disclosed. *See* MTD at 25 (citing *In re Google Cookie*, 806 F.3d at 145; *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024)). Rather, these cases are cited in support of Defendant's argument as discussed, *supra*, in section I.A. (whether a HIPAA violation is separate and independent). And *Nguyen v. Abbott Laboratories, Inc.* is equally unavailing. In *Nguyen*, the plaintiffs were unable to convey (even through the use of screenshots) if the actions they took on a website were transmitting to Google in the manner alleged. 2026 WL 579206, at *4–5 (N.D. Ill. Mar. 2, 2026) ("The mere existence of tracking tools on Abbott's


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

website does not in itself establish the disclosure of HIPAA-protected information."). Plaintiff's screenshots do not suffer the same defect; any time a patient schedules an appointment, that information is transmitted along with the reason for visit. *See* Fig. 3.

### 2. **The alleged harm is unrelated to the receipt of targeted advertising.**

Defendant further attempts to discount Plaintiff's allegations by raising what is ultimately a nonissue. In Defendant's view, Plaintiff's claim should be dismissed because, in part, "Plaintiff fails to identify a single advertisement that she allegedly received." MTD at 13. Similarly, Defendant faults Plaintiff for including "hypothetical 'example' screenshots[.]" *Id.* at 14. Neither argument warrants dismissal.

Defendant fails to cite to any case that would otherwise require Plaintiff to describe the advertisements "that she allegedly received, provide any dates, or provide even an explanation of how any ads were targeted to her." *Id.*; *see also Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (contemplating a Railway Labor Act claim and not an ECPA claim; also unrelated to targeted advertising). On the same note, it is equally unpersuasive that Plaintiff included "hypothetical" screenshots to illustrate the PHI that Defendant discloses to Google. *See* MTD at 14. To the contrary, courts "can infer that Plaintiff received targeted advertisements related to [Defendant's] services due to Defendant's use of [Google Analytics]." *B.N.*, 2026 WL 915343, at *4. And similarly, courts may infer that "hypothetical" screenshots are representative of all users' (including Plaintiff's) experiences. *Garcia.*, 2026 WL 972328, at *6 (stating that the court "can reasonably infer that [Plaintiff's] experience using the [W]ebsite was the same as that of any other" user); *see also Hassid v. Alex & Ani, LLC*, 816 F. Supp. 3d 1196, 1200–01 (C.D. Cal. 2026) (finding the argument that "the Complaint contains only general allegations about what might happen . . . and merely describes hypothetical users and . . . general screenshots" unpersuasive) (cleaned up).

And the inclusion of allegations related to targeted advertising is not related to the validity of Plaintiff's ECPA claim. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) ("[T]he legal injury at the heart of plaintiff's case – the capture of personal information without a user's consent – occurs when the personal information is obtained in the first instance.").


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

Allegations of receiving targeted advertisements often only become noteworthy in analyzing the traceability element of Article III standing and in deciding whether the delayed discovery rule applies to toll the statute of limitations, both of which are not at issue here. *See, e.g.*, *Gaige*, 2025 WL 559719, at *2 (finding allegations of receiving targeted advertisements "sufficient for purposes of traceability"); *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at *1 (N.D. Cal. Oct. 25, 2024) (contemplating whether seeing targeted advertisements would have put users on inquiry notice of injury for purposes of tolling statute of limitations).

Here, these allegations are included to further demonstrate the unlawful purpose Defendant possessed in disclosing Plaintiff's PHI—that Defendant "embedded th[e] tracking technology on its Website for advertising purposes." FAC ¶ 13.

**3. Pecuniary motivation does not insulate tortfeasors from liability.**

Defendant states "courts routinely find" that acting in service of 'targeted advertising' as "insufficient" to invoke the crime-tort exception. MTD at 14. This is wrong. Defendant cites the minority view where cases hold that "the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money[.]" *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) (quoting *In re Meta*, 647 F. Supp. 3d at 797). However, the better-reasoned, overwhelming majority of courts hold the opposite. *E.g.*, *Smith*, 2025 WL 2210002, at *5 ("Courts are divided as to whether a primary financial motivation shields an intercepting party from liability . . . . The Court joins the majority courts that have held a monetary purpose does not insulate a party from liability under the Wiretap Act"); *Ramirez v. LasikMD USA, Inc.*, 2026 WL 194855, at *3 (S.D. Cal. Jan. 26, 2026) ("[T]his Court finds that even where a defendant is arguably motivated by monetary gain, the tort or crime exception may apply."); *Semien*, 2026 WL 216333, at *10 ("The Court is not persuaded by the authorities PubMatic cites to argue financial motives cannot constitute tortious motive."); *Riganian*, 791 F. Supp. 3d at 1090 ("[T]his Court is not persuaded that commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable. Put simply, committing a tort and seeking a profit are not mutually exclusive"); *Castillo*, 2024 WL 4785136, at *6 ("The Court also concludes that the crime-tort exception applies even when a defendant intercepts data for the purpose of financial gain.").


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

To illustrate the problematic reasoning of Defendant's argument, *R.S.* is instructive:

> Take blackmail, which the Ninth Circuit gave as an example of an ECPA violation. Under Prime Healthcare's reading, the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money. There, the interceptor's primary purpose would be to make money. And blackmail would merely be a means by which to make money. Of course, this is often the end goal for blackmail. Under Prime Healthcare's reading, blackmail would rarely, if ever, violate the ECPA. This cannot be the case.

2025 WL 103488, at *7 (cleaned up).

Finally, Defendant tries to once again differentiate the facts, here, from *I.T.* and *Castillo*. MTD at 17, n.4. As already discussed *supra*, Section I.B.1, the disclosure of scheduled medical appointments, alongside identifiers and the reason for the appointment, suffices to invoke the crime-tort exception.

### C. The 'Contents' of Plaintiff's Communications Were Intercepted

Under the ECPA, courts interpret "content" as being "the intended message conveyed by the communication . . . not includ[ing] record information." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (quotations omitted); *see also Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts within the Ninth Circuit have agreed that "content" includes "the names of buttons clicked." *In re Meta*, 647 F. Supp. 3d at 795. "Content" also includes "URLs" and "the particular document" requested. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023). And *In re Zynga Priv. Litig.*, which Defendant cites, held that "[u]nder some circumstances . . . divulging a URL containing [a] search term to a third party could amount to a disclosure of the contents of a communication." 750 F.3d 1098, 1108–09 (9th Cir. 2014). "In the healthcare context, district courts in this Circuit have held that plaintiffs adequately alleged the interception of 'contents' where the intercepted data includes 'personal search queries–such as specialty healthcare providers and treatments for medical conditions–that reveal PHI." *B.N.*, 2026 WL 915343, at *4.


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

Plaintiff clearly alleges Google intercepted the content her communications, rather than mere record information. By intercepting 'Custom Events' and full-length URLs, Google readily identified the reason for Plaintiff's healthcare visits. FAC ¶¶ 51, 67. In other words, the "intended message" intercepted is Plaintiff's submission to book an appointment. This is patently content information. *See, e.g.*, *Doe*, 789 F. Supp. 3d at 837 ("Plaintiffs argue the detailed URLs disclosed to Meta included a combination of PHI and PII, such as health information (appointments, medical conditions . . . . The Court agrees with Plaintiffs that they have alleged the 'contents' of their communications . . . were allegedly intercepted"); *R.C.*, 733 F. Supp. 3d 876, 902–03 ("Here, Plaintiffs allege that the data collected by Defendant and transmitted . . . includes personal health information. Such information reveals a substantive messages about Plaintiffs' health concerns.").

Defendant tries (and fails) to label Plaintiff's user-generated searches and clicks as mere record information. MTD at 19. But every case Defendant cites is factually inapposite. For example, *Smith v. Facebook, Inc.* was already distinguished by this District. *Castillo*, 2024 WL 4785136, at *7 (explaining that in *Smith*, the plaintiffs' browsing data was disclosed on websites that "publish information about medical conditions and treatments[,]" but not on a website where you can actually receive/schedule treatment). Notably, most of Defendant's cited authorities involve defendants who were not purveyors of healthcare. *See In re Nickelodeon*, 827 F.3d 262, 275 (3d. Cir. 2016) (kids television show platform); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) (general internet tracking unrelated to medical appointments); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (retail shopping site).

The remaining cases Defendant cites are inapplicable insofar as they do not contemplate "content" in the same manner as the ECPA or CIPA because they involve a statute not at issue here. *See* MTD at 20 (citing *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *1 (N.D. Cal. Sept. 16, 2024)[2] (granting motion to dismiss CMIA claim); *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (CMIA claim).

---

[2] The motion to dismiss the CMIA claim was later denied. *See M.G. v. Therapymatch, Inc.*, 2025 WL 1447432, at *1 (N.D. Cal. May 19, 2025).


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. To the extent the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15(a)(2). *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint).

Dated: May 28, 2026

Respectfully submitted,

**CARSON NOEL PLLC**

By: */s/ Wright A. Noel*
Wright A. Noel

Wright A. Noel (WSBA #25264)
20 Sixth Avenue NE
Issaquah, WA 98027
Telephone: (425) 837-4717
Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: aleslie@bursor.com

**Pro hac vice* admission to be sought.

*Counsel for Plaintiff*

*I certify that this document contains 4,946 words, in compliance with the Local Civil Rules.*